THE VOGUE v SHOPPING CENTERS, INC (AFTER REMAND)

Docket No. 59347. Argued April 11, 1978 (Calendar No. 1).—Decided June 7, 1978.

The Vogue, a corporation which operates a group of women's wear stores, brought an action for damages for breach of contract and loss of profits sustained because of a delay in opening the plaintiff's new store in Genesee Valley Shopping Center against Shopping Centers, Inc., the owner of the shopping center. The Genesee Circuit Court, Donald R. Freeman, J., entered a judgment for the plaintiff on the jury's award of $27,000 for loss of profits. The Court of Appeals, Danhof, P.J., and Bashara and Allen, JJ., reversed and remanded for entry of a judgment for defendant on the ground that the evidence of lost profits for a new store was too speculative to support the damages awarded, 58 Mich App 421 (1975) (Docket No. 18449). In lieu of granting leave to appeal the case was remanded to the Court of Appeals for reconsideration, 397 Mich 886 (1976). The Court of Appeals, in an unpublished per curiam opinion, on remand, adhered to its previous opinion (Docket No. 18449). Plaintiff appeals. *Held:*

Review of the record in the instant case shows that reasonable minds could disagree as to the adequacy of the plaintiff's proof of lost profits. The trial court properly instructed the jury that they "may not guess, speculate or conjecture" on the amount of lost profits and the jury found the proofs presented adequate. Furthermore, the trial court found that the verdict was supported by the evidence. It was improper for the Court of Appeals to invade the jury's determination of fact.

The decision of the Court of Appeals is reversed and the judgment for plaintiff is reinstated, and the case is remanded to the Court of Appeals for consideration of issues not reached in its earlier decisions.

Justice Levin, joined by Justice Coleman, dissented from the disposition of this case. The remedy in an action for promissory estoppel is flexible and may take a variety of forms, including loss of profits. The question whether the plaintiff may recover lost profits on the evidence presented includes the preliminary question whether lost profits may be recovered at all; that

preliminary question was necessarily implicated in the grant of leave to appeal, and the Court should reach it and decide it. Remanding the case to the Court of Appeals for a third hearing, with the possibility of review in the Supreme Court, places an undue burden on the litigants.

*Rubenstein, Pruchnicki & Chittle* for plaintiff.

*Honigman, Miller, Schwartz & Cohn* (by *Avern Cohn* and *Edward F. Kickham)* for defendant.

PER CURIAM. Plaintiff asks us to examine the Court of Appeals application of *Fera v Village Plaza, Inc,* 396 Mich 639; 242 NW2d 372 (1976), to plaintiff's proof of lost profits based on its inability to open its women's wear store in a shopping center on the date it expected to open. The Court of Appeals, in an unpublished per curiam opinion dated January 18, 1977, found the proof of lost profits insufficient to support the jury's award of $27,000. We disagree.

I

Plaintiff operates five women's wear stores in the Flint area, including one in the Genesee Valley Shopping Center. Genesee Valley is a 54-store shopping mall anchored on one end by Sears and on the other by J. L. Hudson Co. Defendant, substantially owned by the corporation that controls Hudson's, developed Genesee Valley. Plaintiff leased a large store near the Hudson's end before construction.

From the beginning, the parties contemplated an opening for the mall and Hudson's in July of 1970. In early May, 1970, a public opening was set for July 16, 1970, to be preceded by a private sale on July 14 and 15 to 60,000 personally invited

area residents. Defendant knew by late May that it was going to have serious labor problems that might delay the opening. On June 5, however, it was still telling the tenants:

"The grand opening of Genesee Valley is July 16, 1970. It is imperative that all of our tenants cash in, so to speak, on the large amount of customers that we are expecting at the center during the grand opening days. This means that your construction department should get their contractors moving in order to complete your store so that you will be opened and doing business with the public on these days."

A strike extended through the month of June to June 29. On July 1, defendant notified plaintiff that it had rescheduled the grand opening for August 3, but it would allow Hudson's to open on July 14, as originally scheduled.

Plaintiff sued defendant on a promissory estoppel theory and sought lost profits for the 17-day delay in opening. A jury awarded plaintiff damages of $27,000.

II

Plaintiff's position at trial was that the tremendous promotional campaign associated with the Hudson's opening would have generated substantial sales at its store. Plaintiff characterized as "anticlimatic" the subsequent opening of the remainder of the mall.

Plaintiff's accountant testified that its Genesee Valley store generated in excess of $61,000 in sales during the 17 days following August 3. He computed a 27% profit factor based on plaintiff's Genesee Valley operations for the remainder of the

fiscal year. Two of plaintiff's officers, qualified as experts by reason of their trade experience, estimated lost sales for the store of a minimum of $100,000 during the 17-day period of non-operation.

Also testifying for plaintiff was a New York-based management consultant who advised women's wear retail stores in 30 states. He had been involved in opening stores in "several hundred" shopping centers. He testified that the sales during the second opening suffered because the momentum of the Hudson's opening had been lost and customer enthusiasm generated by the initial opening could not be reinstituted. In measuring lost sales, he relied on both his trade experience and his experience with the insurance industry in establishing recoveries under business interruption policies. He explained the components of his analysis to the jury. As a result of his analysis, he pegged lost sales at approximately $104,000, calling this figure fair, conservative and realistic.

Defendant thoroughly cross-examined plaintiff's witnesses and itself introduced the deposition of a witness with four years experience as a ladies' wear merchandise manager. The witness testified that in her opinion plaintiff's sales at its Genesee Valley store during the 17-day period following Hudson's opening would not have been as great as the nearly $62,000 in sales the store realized during the 17-day period following its own opening.

The trial judge considered the question of whether or not to submit the issue of lost profits to the jury. He expressed some difficulty with the testimony on this issue, but noted that it concerned an expansion of an existing business, rather than a new business. He decided to allow the issue to go to the jury and instructed them on

the question of speculativeness.[1] Subsequently, in denying a motion for judgment notwithstanding the verdict and new trial, he repeated his belief that the issue was properly one for the trier of fact.

### III

In *Fera, supra,* we held that a new business may recover damages for lost profits through a breach of a lease. We found that the plaintiff's proof of lost profits was reasonably certain and therefore sufficient to support the jury verdict. In so ruling we gave considerable weight to the opinion of the trial judge who, as here, found that the verdict was justified by the evidence.

Plaintiff's experts computed their estimation of lost profits by using the history of sales in plaintiff's Genesee Valley store during a period immediately following the complained-of delay. By contrast, the lost profits found to be established with reasonable certainty in *Fera* were computed on a history of sales in different types of stores, at more remote times, and in different locations.

Defendant does not dispute that during the second 17-day period plaintiff's gross sales amounted to nearly $62,000. It argues, rather, that the issue should not have gone to the jury because there was no competent proof of lost sales as a multiple or fraction of this $62,000 figure. Defendant focuses on the admission of the management consul-

---

[1] The judge told the jury:

"In arriving at a dollar amount of damages, you may not guess, speculate or conjecture. This is really not a guessing game. It is intended to be established within the burden that I have earlier described. Loss of profits must be shown with a reasonable degree of certainty. The showing of loss of profits by the plaintiff must have a reliable basis for a determination. You must find in the evidence a reasonable basis for computing it."

tant called by plaintiff that his figure was to a certain extent "speculative" despite his experience in the trade and his familiarity with the insurance industry formula used in establishing recoveries under business interruption policies. But, as the witness said, "It has to be, because the store was not open".

Our review of the record convinces us that reasonable minds could disagree as to the adequacy of plaintiff's proof of the store's lost profits. The trial judge instructed the jury that they "may not guess, speculate or conjecture" and the jury found the proofs adequate.[2] Accordingly, we hold that it

---

[2] The trial judge also explained to the jury the calculations involved in measuring loss of profits:

"The plaintiff must, as a part of its proving loss of profits, show in the same manner and to the same extent the expenses it saved by not operating between July the 14th and August the 3rd of 1970 at the Genesee Valley Shopping Center, and the additional costs that would have been required, if any, to generate the sales that it claims it would have made during the 17-day period.

"Plaintiff is not entitled to recover any of the expenses it saved by not operating or any of the costs which would have been required to generate the projected sales.

"It was the duty of the plaintiff to use reasonable care to reduce as much as possible the damages sustained or alleged to have been sustained by it. If you find that the plaintiff by reasonable care could have reduced any expenses, thereby lessening its loss, the defendant cannot be charged with the responsibility for any expense resulting from the plaintiff's failure to use such care.

"In computing loss of profits, you must begin by determining the gross sales that the plaintiff lost by not being open at the Genesee Valley Shopping Center for the 17-day period in question. You must then proceed to determine the net sales lost by plaintiff; that is, the sales lost at the Genesee Valley Shopping Center because the plaintiff was not open there, and there was a reduction of sales made at the other Vogue stores of plaintiff which would not have been made had the plaintiff been operating at the Genesee Valley Shopping Center during the period in question.

"Please bear in mind, this cause of action which the plaintiff claims is not brought as a claim by a division in the Genesee Valley. It is brought by the entire corporation, the Vogue Corporation.

"Once you have determined the net sales loss, you must then deduct the cost of such sales, otherwise described as the cost of merchandise.

"From that figure so obtained, you must further deduct the ex-

was improper for the reviewing court to invade the jury's determination of fact.

We reverse the decision of the Court of Appeals, reinstate the trial court's judgment on the verdict and remand to the Court of Appeals for considera-

---

penses saved by plaintiff by not operating between July the 14th and August the 3rd of 1970, as well as any additional costs which would have been required to generate such sales.

"In considering the expenses saved by not operating you must take into consideration the difference between the direct expense, being one which relates to the operation of the Genesee Valley Shopping Center, and so-called indirect or overhead expenses, which relate to all operations of the plaintiff. To the extent that any item of direct expense was not incurred because the store at Genesee Valley Shopping Center was not open, it should be deducted. To the extent that any direct expense was incurred, if the plaintiff received a benefit from it or it could have been avoided, it should be deducted. Indirect expenses which continued and which would have been covered by the net sales lost are not to be deducted. I mention, also, the general concept that damages are not intended to punish anyone and they are not intended to reward anyone. They are intended to put a party who claims to have been aggrieved at the hands and by the responsibility of another in substantially the same position as it was prior to the claimed injury."

The judge concluded his instructions in this area by giving the jury a formula for computing loss of profits:

"Now, we have set up what is described as a formula which might guide you in going down the line, if you get to the issue of damages at all, and it is this:

"First of all, find the amount of gross sales which would have been made at the Genesee Valley Shopping Center during the period July 14th, 1970 to August the 3rd of 1970;

"Next, deduct the gross sales at other locations which would not have been made had the store at Genesee Valley Shopping Center been open during the period July 14, 1970 to August the 3rd of 1970;

"Then, we have the net sales for the period of July the 14th, 1970 to August the 3rd of 1970;

"At this point, you deduct the costs of such sales;

"You deduct the expenses not incurred because the store at the Genesee Valley Shopping Center was not open from July the 14th, 1970 to August the 3rd of 1970. Include in this deduction direct expenses * * * incurred for which the plaintiff received a benefit and direct expenses which could have been avoided.

"Deduct the additional costs which would have been required to generate the gross sales from the period July 14, 1970 to August the 3rd, 1970 at the Genesee Valley Shopping Center;

"And then, you arrive at what is known as the net profit lost."

tion of issues not reached in its earlier decisions. Costs to plaintiff.

KAVANAGH, C.J., and WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

LEVIN, J. *(dissenting)*. I cannot join in the Court's disposition of this case.

Professor Corbin stated that "the form and extent of the remedy to be applied" in an action for promissory estoppel is flexible and is "dependent on the circumstances of the individual case".[1] The remedy awarded may be specific performance, restitution, *quantum meruit,* reimbursement of expenditures and losses, or full damages, which may include loss of profits.

The question whether The Vogue may recover lost profits on the evidence presented includes the preliminary question of whether lost profits may be recovered at all. In granting leave to appeal on "the application of *Fera v Village Plaza, Inc,* 396 Mich 639 [242 NW2d 372] (1976), to the record developed in this case", the Court necessarily implicated and should reach and decide that preliminary question. This case has already been to the Court of Appeals twice. Remanding it for a third hearing, with the possibility of further review in this Court, places an undue burden on the litigants.

COLEMAN, J., concurred with LEVIN, J.

[1] 1A Corbin on Contracts, § 205, pp 236 *et seq.*