GAGNON v DRESSER INDUSTRIES CORPORATION

Docket No. 59910. Submitted May 3, 1983, at Detroit.—Decided September 1, 1983.

Plaintiff, Michael Gagnon, brought an action against Dresser Industries Corporation and Industrial Crane Service, Inc., in the Wayne Circuit Court for damages for personal injury. Plaintiff had been paid $100,000 in settlement with third persons not parties to the suit. Plaintiff's action was filed prior to enactment of the statute creating products liability actions and their defenses, including comparative negligence, but was in the nature of a products liability action. Industrial Crane defaulted. As to the action against Dresser, the jury found that plaintiff had suffered $200,000 in damages, but that plaintiff had been 50% negligent, reducing his entitlement to $100,000. Plaintiff had received a $100,000 settlement award from third parties in connection with his injuries. The trial court, taking the settlement award into account, entered judgment for plaintiff for $50,000, plus interest, Harold Hood, J. The court heard evidence on the default by Industrial Crane and found that plaintiff had suffered $150,000 in damages. Because the jury had found plaintiff to be 50% negligent, the court entered a judgment against Industrial Crane for $75,000, plus interest. Dresser appealed and plaintiff cross-appealed. *Held:*

1. The comparative negligence defense applies to tort-based

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d New Topic Service, Comparative Negligence § 33.
63 Am Jur 2d, Products Liability §§ 94, 111, 112.

[3] Am Jur 2d New Topic Service, Comparative Negligence §§ 20, 21.
Retrospective application of state statute substituting rule of comparative negligence for that of contributory negligence. 37 ALR3d 1438.

[4] Am Jur 2d New Topic Service, Comparative Negligence § 41.

[5] 45 Am Jur 2d, Interest and Usury §§ 96-98.
Date of verdict or date of entry of judgment thereon as beginning of interest period on judgment. 1 ALR2d 479.

[6] 30 Am Jur 2d, Evidence § 1003.
Admissibility in evidence, on issue of negligence, of codes or standards of safety issued or sponsored by governmental body or voluntary association. 58 ALR3d 148.

products liability actions irrespective of the fact that the plaintiff is injured as a result of a breach of an implied warranty.

2. Comparative negligence applies as a defense to actions for negligence tried after February 8, 1979, and to actions for products liability tried after December 13, 1978. The trial took place after February 8, 1979.

3. The court did not err in computing the proper judgment amount. A judgment amount against a nonsettling joint tortfeasor is to be computed by first setting off any settlement amount from the gross damages as found by the trier of fact and then figuring the deduction for plaintiff's share of the total negligence on that amount.

4. Interest on judgments is computed from the date of filing of the complaint even where the judgment is against a party added to the lawsuit at a later date.

5. The court did not err in allowing the jury to consider plaintiff's lost earning capacity as an element of damages.

6. The court did not abuse its discretion in excluding certain federal and state safety regulations from evidence. The purpose in submitting the regulations was accomplished with other evidence and the regulations were in technical language and likely to cause confusion.

7. The court did not err in allowing plaintiff to cross-examine a witness about the American Standards Association safety code. Dresser had opened the inquiry with questions to a previous witness concerning two ASA standards.

Affirmed.

1. PRODUCTS LIABILITY — COMPARATIVE NEGLIGENCE — IMPLIED WARRANTY — UNIFORM COMMERCIAL CODE.

The implied warranty provisions of the Uniform Commercial Code are inapplicable to a products liability action alleging a breach of implied warranty; the doctrine of comparative negligence does apply to such action (MCL 440.2314; MSA 19.2314).

2. PRODUCTS LIABILITY — COMPARATIVE NEGLIGENCE — TORTS — SAFETY DEVICES.

Comparative negligence is applicable as a defense to any claim for injury resulting from inadequate safety devices.

3. TORTS — COMPARATIVE NEGLIGENCE — PRODUCTS LIABILITY.

Comparative negligence applies as a defense to actions for negligence tried after February 8, 1979, and to actions for products liability tried after December 13, 1978.

4. Negligence — Comparative Negligence — Judgments.

A judgment amount against a nonsettling joint tortfeasor is to be computed by first setting off any settlement amount from the gross damages as found by the trier of fact and then figuring the deduction for plaintiff's share of the total negligence on that amount.

5. Judgments — Interest — Court Rules.

Interest on judgments is computed from the date of filing of the complaint even where the judgment is against a party added to the lawsuit at a later date; amendments to plaintiff's pleadings relate back to the date of the original complaint (GCR 1963, 118.4).

6. Evidence — Safety Standards.

Safety standards promulgated under federal and state occupational safety and health acts may properly be excluded from evidence where the evidence would be cumulative and where the standards are written in technical language making confusion a probability (MRE 403).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Nicholas J. Rine*), for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Thomas F. Myers*), and *Gromek, Bendure & Thomas* (by *Mark R. Bendure*), for defendant.

Before: Gribbs, P.J., and Bronson and Beasley, JJ.

Per Curiam. Both plaintiff and defendant Dresser Industries Corporation appeal as of right from a judgment entered on the jury's verdict in favor of plaintiff. The jury found that plaintiff had suffered $200,000 in damages, but that plaintiff had been 50% negligent, reducing his entitlement to $100,000. Plaintiff had received a $100,000 settlement award from third parties in connection with his injuries. The trial court, taking the settlement award into account, entered judgment for plaintiff for only $50,000 plus interest.

On appeal, plaintiff raises two issues, neither of which require reversal. First, plaintiff urges that the defense of comparative negligence, *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979); MCL 600.2945; MSA 27A.2945, does not apply to actions such as the present one, where the plaintiff brings his action under a theory of breach of implied warranty. Plaintiff cites "implied warranty" provisions of the Uniform Commercial Code (UCC), MCL 440.2314; MSA 19.2314, in making this argument. These provisions are not apposite. Plaintiff has apparently confused contractual doctrines of implied warranty with the tort-based products liability doctrine of the same name. See *Williams v Detroit Edison Co,* 63 Mich App 559, 565; 234 NW2d 702 (1975), noting the distinction and pointing out the inapplicability of the UCC. Plaintiff's implied warranty theory is not contractual, but a products liability action as defined by MCL 600.2945; MSA 27A.2945. Recent authority indicates that under this statute comparative negligence applies "irrespective of the fact that a plaintiff is injured by the breach of an implied warranty". *Karl v Bryant Air Conditioning Co,* 416 Mich 558, 569; 331 NW2d 456 (1982). We also note that comparative negligence is a defense to any claim of inadequate safety devices. *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29; 323 NW2d 270 (1979). Accordingly, given that plaintiff's claim is not contractual in nature, *Williams, supra,* comparative negligence was properly found applicable regardless of whether the claim is characterized as a products liability action for breach of implied warranty on the one hand, or a claim of inadequate safety devices on the other.

Plaintiff raises an alternative argument with respect to the applicability of comparative negli-

gence: that the doctrine does not apply because he filed his original action before the enactment of MCL 600.2945; MSA 27A.2945, establishing products liability actions and their defenses, including comparative negligence. Defendant responds that comparative negligence does apply because it was not added as a party defendant until after the statute became effective. Neither party has addressed the crucial aspect of this issue: namely, that comparative negligence applies retroactively as a defense to both negligence, *Placek, supra,* and products liability, *Karl, supra.* Under *Placek,* comparative negligence was declared applicable to any case in which trial had yet to commence; the trial in this case began in 1981, two years after the date the *Placek* opinion was released, February 8, 1979. Similarly, in *Karl, supra,* the Court held that comparative negligence applies to all actions brought to trial after the products liability statute's effective date, MCL 600.2945; MSA 27A.2945, 1978 PA 495, effective December 13, 1978. As noted above, this action was pending as of that date. There is no merit to plaintiff's claim that the application of comparative negligence amounts to a deprivation of due process. In *Karl, supra,* the Court held that the statute does not deprive a plaintiff of his claim for injuries, but that it merely revises the method of computing his damages. As a remedial statute, it does not deprive defendant of any vested rights. *Id.,* pp 579-580.

From the foregoing, we conclude that the issues raised in plaintiff's appeal are without merit.

Defendant's cross-appeal raises several additional issues, which also lack merit. First, defendant contends that the trial court erred in computing plaintiff's comparative damages. According to defendant, the court should have applied the following formula:

| | |
|---:|---|
| $200,000 | Total damages found by the jury |
| −100,000 | Deduction for 50% comparative negligence |
| $100,000 | Remaining amount equals plaintiff's entitlement |
| −10,000 | Settlement amount received by third parties |
| -0- | Amount left awardable on the verdict |

Plaintiff, on the other hand, urges this Court to uphold the trial court's application of the following formula:

| | |
|---:|---|
| $200,000 | Total damages found by the jury |
| −100,000 | Settlement amount |
| $100,000 | Remaining amount awardable by any verdict |
| 31,580 | Interest from original filing |
| $131,580 | Total amount awardable, with interest |
| −65,670 | Deduction for 50% comparative negligence |
| $ 65,670 | Judgment amount properly entered in plaintiff's favor |

We agree with plaintiff that the trial court acted properly in adopting the latter formula. It is true that, under the language of some cases cited by defendant, settlement amounts may be deducted from the net recovery (computed after deducting for comparative negligence), rather than from gross damages. However, defendant's proposed formula would allow defendant to derive the windfall of escaping liability for its negligence merely because a third party had made prior settlements to which defendant had not contributed.

It is true that under *Placek, supra, as between a plaintiff and a nonsettling tortfeasor,* the plaintiff

must bear responsibility for his losses in proportion to the amount by which plaintiff shares blame with that nonsettling tortfeasor. However, nothing in the *Placek* language cited by defendant suggests that the plaintiff must deduct amounts received in settling with *other tortfeasors.* Such a result would be particularly inappropriate where, as here, the matter of the other tortfeasors' degree of fault was not before the jury.

The foregoing reasoning has recently been applied by the Supreme Court in *Mayhew v Berrien County Road Comm,* 414 Mich 399; 326 NW2d 366 (1982). There, the Supreme Court expressed a policy against requiring a plaintiff and his adversaries to litigate the relative degree of fault of third parties not represented in the action:

"[N]umerous difficulties would be presented if we were to allow the jury to apportion damages among all tortfeasors, including a settling non-party. It would mean that the settling tortfeasor's liability would be assessed without anyone adequately representing that interest. It would put the plaintiff in a unique trial situation. The plaintiff would not only have to advocate that he was not at fault, he would have to convince the jury that the non-party was only minimally at fault. Otherwise, there might be too great a percentage of fault attributed to the non-party, thus reducing the plaintiff's recovery." 414 Mich 412.

The foregoing policy would be fulfilled by the application of a formula which allows prior settlements to remove the issue of a third party's liability from any litigation between the plaintiff and the nonsettling tortfeasor. Such a formula can readily be derived as follows. The court could characterize plaintiff's entire claim for injuries as the amount of total damages which the jury has found, in the present case, $200,000. The court

could then conclude that this "claim" should be reduced by the amount of the settlement, $100,000 here, recognizing that the settlement represented satisfaction of the third party's liability, thus removing the issue of that third party's fault from the subsequent litigation between plaintiff and the nonsettling tortfeasor, *Mayhew, supra.* Applying this analysis, the trial would then be confined to the issue of how to apportion fault as between the plaintiff and the nonsettling tortfeasor for the remaining $100,000 in damages. The jury would not have to face the problem of determining the liability of non-parties; its sole duty would be to allocate fault among the parties who were represented at trial, plaintiff and the nonsettling tortfeasor. The trial court's formula is consistent with the foregoing analysis.

The court's formula is also consistent with the language of MCL 600.2925d; MSA 27A.2925(4), which, while expressly preserving the doctrine of joint and several liability, specifically discharges settling tortfeasors from continued liability for contribution. The statute's reference to the discharge of settling tortfeasors is consistent with the application of a formula which presupposes that their negligence is no longer an issue at a trial involving the plaintiff and the nonsettling party.

The court's formula is certainly consistent with the parties' understanding of the issues which remained viable at trial. Neither of the parties made any effort to litigate the fault of the settling third party. The only issue was the relative liability as between plaintiff and defendant Dresser Industries, Inc.

Given the foregoing, we find that the trial court acted properly in applying the above-described formula advocated by plaintiff, under which the

settlement amount received from third parties is deducted from gross damages, *before* deducting for plaintiff's relative degree of fault. Defendant's proposed formula would have required jurors to consider plaintiff's degree of fault relative to *all* parties involved in the incident, including nonparty settling tortfeasors, contrary to the policies announced in *Mayhew.* Accordingly, we conclude that there is no merit to this aspect of defendant's appeal.

Defendant next urges that the trial court erred in computing interest from the date of filing, rather than from the date defendant was added as a party. We find this argument to be totally without merit. Although MCL 600.6013; MSA 27A.6013 authorizes a trial court to add interest "from the date of filing the complaint", the statute does not differentiate between original filing and an amendment which adds a new party defendant. Twice this Court has construed the statute to refer to a period from the date of original filing rather than an amended complaint, even where it was the amendment rather than the original complaint which added the defendant in question. *Michigan Mutual Liability Co v Staal Buick, Inc,* 41 Mich App 625, 627-628; 200 NW2d 726 (1972); *Awedian v Theorodre Efron Manufacturing Co,* 66 Mich App 353, 356-357; 239 NW2d 611 (1976), *lv den* 396 Mich 856 (1976). In each case, the Court noted the general rule that amendments relate back to the date of an original pleading, GCR 1963, 118.4. We find no occasion to depart from this reasoning here. Accord, *Oakwood Homeowners Ass'n, Inc v Marathon Oil Co,* 104 Mich App 689, 693; 305 NW2d 567 (1981).

Defendant's remaining issues on appeal involve evidentiary rulings made by the trial court. We

find no reversible error in any of those rulings. First, the court did not err in allowing the jury to consider plaintiff's lost earning capacity as an element of damages. There was sufficient evidence to go to the jury on the issue of whether plaintiff's disabling back problems were causally related to the leg injury which was in turn caused by defendant's negligence. Plaintiff's expert gave testimony which indicated a causal link between plaintiff's back condition and the leg injury. He specifically stated that the leg injury caused plaintiff to face a physical "disadvantage" when he attempted to continue his heavy work duties, and that, as a result of this disadvantage, plaintiff's back was strained and eventually injured to the point of impairing plaintiff's earning capacity.

We note further that there was sufficient evidence from which the jury could estimate plaintiff's lost earning capacity. Plaintiff introduced testimony regarding amounts which he would have made had he continued in his preinjury employment, and contrasted amounts which he has earned since the injury. Plaintiff also submitted evidence as to the amount of time which he had to take off from work as the result of his injury, as well as the time which elapsed before he was finally dismissed from work as a result of his disabilities. The forgoing evidence, taken together with plaintiff's evidence as to life expectancy, formed a sufficient basis from which the jury could estimate his lost earning capacity in a manner which went beyond mere conjecture, *Vogue v Shopping Centers, Inc (After Remand)*, 402 Mich 546, 550-552; 266 NW2d 148 (1978). In concluding review of the earning capacity issue, we note that there is no merit whatsoever to defendant's claim that plaintiff had potential earnings "as a psychol-

ogist". Plaintiff's training in that field was limited to a bachelor's degree, and nothing in the record suggests that plaintiff was in any way qualified to earn a living as a "psychologist". The record reveals no earning capacity in this field at all.

The trial court did not abuse its discretion in excluding evidence of certain safety regulations promulgated under the Occupational Safety and Health Act (OSHA) and its Michigan equivalent, MIOSHA. Any error as to this issue was harmless. Defendant's only purpose in submitting these regulations as evidence was to establish plaintiff's negligence in handling the overhead crane; the sole manner in which defendant claimed such negligence was in the fact that plaintiff had left the crane's controls unattended with a suspended load. The standard of care which prohibits this course of action is embodied in ANSI standard 23.2.35, of which the jury was informed. Defendant's purpose in introducing the regulatory codes was already fulfilled by other evidence. Accordingly, the court's decision to exclude them was proper under MRE 403, which specifically allows exclusion of "cumulative" evidence. The court's decision to exclude the regulatory language was particularly appropriate in light of its highly technical language. The court was laudably sensitive to the possibility of jury confusion, MRE 403, noting that any peripheral reference which the regulations may have to plaintiff's conduct "would certainly be far outweighed by the confusion to the jury" which would result from exposure to all of the regulations' "gobbledegook".

One additional factor supports the court's decision to exclude certain regulations. The MIOSHA code contains a prerequisite to a finding of worker negligence: namely, training in the applicable

standards. Defendant never tried to lay any foundation that plaintiff had received the requisite training; the record establishes that plaintiff did not. Accordingly, plaintiff could not have been found negligent in failing to adhere to the MIO-SHA code's standards, and the court's refusal to allow reference to that standard was thus at most harmless error.

Given the foregoing, together with the fact that defendant's expert was still permitted to testify that plaintiff's conduct violated the regulations, we find no abuse of discretion in the court's decision to exclude the language of the regulations themselves.

Defendant's final contention on appeal is that the court erred in permitting cross-examination about the American Standards Association (ASA) safety code. We find no error. Defendant was the party which opened the inquiry into this standard by cross-examining one of plaintiff's witnesses about ASA standards 1043(b) and 1043(c). As noted above, defendant also introduced ANSI section 23.2.35, governing the conduct of crane operators. The record does not reveal that plaintiff in any way prevailed upon the trial court to introduce evidence of any such standards. In short, since defendant was the party who introduced these standards it cannot be heard now to complain of unfair treatment in the trial court's decision to permit cross-examination on the subject.

We conclude that there is no merit to any of the issues raised in defendants' cross-appeal. The trial court's disposition must be affirmed in all respects.

Affirmed.